**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **LANDON T. JONES A/K/A** | § | |
| **ADOBE BRYANT,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. _____** |
| | § | |
| **NIKE, INC., BSN SPORTS, LLC,** | § | |
| **AND DICK'S SPORTING GOODS,** | § | |
| **INC.,** | § | |
| *Defendants.* | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

Plaintiff, Landon T. Jones a/k/a Adobe Bryant ("Plaintiff" or "Jones"), files this Original Complaint against Defendants, Nike, Inc. ("Nike"), BSN Sports, LLC ("BSN"), and Dick's Sporting Goods, Inc. ("Dick's") (collectively, "Defendants"), and would respectfully show unto the Court as follows:

## I.
### PRELIMINARY STATEMENT

1.    Mr. Jones is a marketing and creative consultant, graphic designer, photographer, and filmmaker who has been forced to file this action to protect his intellectual property rights and recover damages Defendants caused as a result of trademark infringement, violations of Section 43(a) of the Lanham Act, and other wrongful conduct.

2.    In December 2019, Jones developed a concept for a March Madness[1] campaign and designed logos, artwork, and marketing materials to pitch and hopefully sell

---

[1] "March Madness" refers to the National Collegiate Athletic Association's ("NCAA") men's and women's college basketball tournaments. A total of 68 teams—from schools across the country—are selected to compete in March

or license to Nike or other similar businesses engaged in sports apparel sales.  The central concept for Jones's campaign was Jones's distinctive "BALLIN" (or "B ALL IN") mark:

 

3.      As part of Jones's BALLIN March Madness campaign, he also designed a number of tee shirts with the "BALLIN" mark in two-toned color schemes designed to match the colors of various universities:



4.      In April 2020, Jones submitted his pitch deck for the BALLIN March Madness campaign to Lauren Gallo—a Senior Director in Nike's marketing and creative department.  Although Ms. Gallo viewed Jones's pitch deck three separate times over the course of four days using a Dropbox link Jones sent to her, neither she nor anyone else from Nike ever responded to Jones's submission.  As a result, Jones licensed his BALLIN mark to a third party, who printed and sold sweatshirts and tee shirts using Jones's BALLIN mark.

---

Madness every year for the college basketball national champion. March Madness has gained notoriety since its inception in 1939. Today, it attracts millions of viewers each year.  *See* Daniel Wilco, *What is March Madness: The NCAA tournament explained*, NCAA.COM (Mar. 14, 2022), *available at* https://www.ncaa.com/news/basketball-men/bracketiq/2022-03-14/what-march-madness-ncaa-tournament-explained.

5.    In February 2022, Nike debuted its March Madness Campaign for the 2022 NCAA Division I Basketball Tournament, including tee shirts for Nike sponsored schools competing in the tournament:



6.    Nike's BALLIN logo and March Madness tee shirt design is nearly identical to Jones's BALLIN mark and original March Madness tee shirt design:

| Jones's BALLIN Mark and Design | Nike's Unauthorized BALLIN Design |
|---|---|
|  | |

7.    Nike created its BALLIN tee shirt to be worn as the official cover-shirt by the thirty-nine Nike sponsored schools competing in March Madness.[2]  As a result, Nike's

---

[2] Out of the 68 total teams that competed in the 2022 March Madness tournament, Nike sponsors and outfits 39 (over 50%).  Each of these teams were provided and wore Nike's March Madness tee shirt as its official cover-shirt during warmups and also on the bench.

shirts have, by design, been repeatedly showcased in broadcasts, photographs, and recordings throughout the entire March Madness tournament:

 

8.      Nike is also selling its unauthorized BALLIN tee shirts on Nike's website, and has distributed, sold, and/or licensed its BALLIN shirts to various retailers including Dick's, Fanatics, Inc., and others, who are currently selling the shirts both online and in certain retail locations across the entire United States.  Nike's shirts have also been printed, distributed, and sold to various high school basketball programs and club basketball teams through various distribution companies including BSN.

9.      Accordingly, Defendants' unauthorized use of Jones's BALLIN mark has saturated the market to such a great extent that Jones's senior mark, in essence, has become worthless.  Nike, BSN, and Dick's are currently manufacturing, distributing, and selling tee shirts and apparel that infringe on Jones's intellectual property and have caused actual confusion or at least a likelihood of confusion in the marketplace.  Accordingly, Jones has been forced to file this action to protect his ownership rights and recover the damages he has suffered as a result of Defendants' trademark infringement and unfair competition.

## II.
### JURISDICTION & VENUE

10.     This action arises under the Lanham Act[3] and under statutory and common law related to unfair competition and unjust enrichment.  This Court has subject matter jurisdiction pursuant to Section 1121, Title 15, and Sections 1331, 1338, and 1367, Title 28 of the United States Code.[4]

11.     Venue is proper in the Southern District of Texas pursuant to Section 1391, Title 28 of the United States Code[5] because a substantial part of the events giving rise to the claims at issue occurred in this District and because Defendants are subject to the Court's personal jurisdiction in this District.

12.     This Court has personal jurisdiction over Defendants because, on information and belief, Defendants do business in this District and have committed acts of infringement at issue in this Complaint in this District.

## III.
### PARTIES & SERVICE

13.     Plaintiff, Landon T. Jones a/k/a Adobe Bryant, is an individual residing in the State of Wisconsin.

14.     Defendant Nike, Inc. is an Oregon corporation doing business in the State of Texas.  Nike may be served through its registered agent, United Agent Group Inc., at 5444 Westheimer Road, Suite 1000, Houston, Texas 77056, or wherever it may be found. Service is requested at this time.

---

[3] 15 U.S.C. §§ 1051–1127.
[4] 15 U.S.C. § 1121; 28 U.S.C. § 1338.
[5] 28 U.S.C. § 1391.

15.     Defendant BSN Sports, LLC is a Texas limited liability company doing business in the State of Texas.  BSN may be served through its registered agent, Corporate Creations Network Inc., at 5444 Westheimer Road, Suite 1000, Houston, Texas 77056, or wherever it may be found.  Service is requested at this time.

16.     Defendant Dick's Sporting Goods, Inc. is a Pennsylvania corporation doing business in the State of Texas.  Dick's may be served through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701, or wherever it may be found.  Service is requested at this time.

## IV.
### FACTUAL BACKGROUND

17.     Jones is a multi-disciplined, freelance graphic designer, filmmaker, photographer, and creative consultant who creates marketing materials, graphic designs, photography, videography, and other creative concepts, designs, and promotions, as well as providing creative direction, editing, and website design.

18.     Over the past ten years, Jones has created a wide-ranging variety of content for companies such as Sony, Under Armour, Finish Line, the National Football League, the National Basketball Association, and Microsoft, as well as multiple artists, professional athletes, and other individuals and companies.  Working with Nike, however, has long been one of Jones's professional goals.

**A.    Jones creates the BALLIN mark and associated March Madness Campaign.**

19.    In December 2019, Jones developed a concept for a marketing campaign for the NCAA Division I Basketball Tournaments ("March Madness") and designed logos, artwork, and marketing materials to be pitched and hopefully sold or licensed to Nike or other similar companies engaged in the sale of sports apparel.   The central concept for Jones's March Madness campaign was "BALLIN" (or "B ALL IN"):[6]



20.    This central concept was embodied in Jones's distinctive "BALLIN" mark, which he independently created and designed in a two-tone color scheme to emphasize its double meaning: "ballin" and "be all in."

 

---

[6] *See* **Ex. A** (BALLIN March Madness Pitch Deck).

21.    Jones's BALLIN mark is thus inherently distinctive because, as a unitary whole, it is both suggestive and arbitrary, intended to imply multiple meanings—"*balling*" ([1] referring to a lifestyle of wealth or success and [2] related to basketball generally) and "*be all in*" ([3] referring to total commitment, sacrifice, and maximum effort)—none of which are descriptive of March Madness or Jones's tee shirts and related marketing materials.

22.    On December 15, 2019, Jones completed his BALLIN March Madness pitch deck for Nike, which showcased multiple campaign concepts, graphic designs, artwork, logos, and tee shirt designs bearing Jones's BALLIN mark:[7]



---

[7] *See* Ex. A.

23.     As shown above, Jones's tee shirt designs included his BALLIN mark in two-tone offsetting colors to match the color schemes of various universities, along with the Nike "Swoosh" or Jordan logo and the logo of the particular university.

24.     Notably, Jones designed the "B" and "IN" to be one matching color with the "ALL" in a second color to denote both "BALLIN" and "B · ALL · IN" to the viewer.  The design also includes the school's logo arranged just beneath the mark towards the center of the shirt.

**B.     Jones submits the BALLIN March Madness materials and pitch deck to Nike.**

25.     After attempting to reach someone at Nike through intermediaries without any success, Jones decided to submit his pitch deck directly to someone at Nike in April of 2020.

26.     After compiling eight pages of designs, marketing concepts, promotional materials, and artwork into a single PDF pitch deck centered around the BALLIN mark (the "BALLIN Pitch Deck"),[8] Jones created a link to the single, 8-page file on Dropbox.com, which was uploaded on Saturday, April 18, 2020, at 11:05 p.m.

27.     That same night, April 18, 2020, minutes after being uploaded, Jones submitted the Dropbox link to the BALLIN Pitch Deck to Lauren Gallo, Senior Director, Brand Marketing & Creative at Nike, through a direct message to her personal account on Instagram.  Notably, Jones did not submit this link to anyone other than Lauren Gallo.

---

[8] *See* Ex. A.

28.     At 11:15 p.m. on Saturday, April 18, 2020—within minutes of receiving Jones's direct message on Instagram containing the link—Lauren Gallo viewed the Dropbox file containing Jones's BALLIN Pitch Deck.

29.     The next day, on Sunday, April 19, 2020, at 1:45 p.m., Ms. Gallo viewed the Dropbox file containing Jones's BALLIN Pitch Deck for a *second* time.

30.     Later that evening, at 6:43 p.m. on April 19, 2020, Jones commented on one of Ms. Gallo's Instagram posts, following up on his direct message from the night before:

> **adobebryant** Hi 🫰 Hope all is well with you. Sent you a DM recently - you don't follow me, so I'd imagine the message is chilling in your message requests. Would you mind taking a look? It pertains to marketing. Thank you for your time! 😀 💛 🙇

31.     On Tuesday, April 21, 2020, at 9:48 a.m., Ms. Gallo viewed the Dropbox file containing Jones's BALLIN Pitch Deck for a *third* time, as shown by the file history below:

| | | Apr 21, 2020 |
|---|---|---|
| ***Third*** time Gallo views Pitch Deck | → | **G** Guest viewed this file 9:48 AM |
| | | Apr 19, 2020 |
| ***Second*** time Gallo views Pitch Deck | → | **G** Guest viewed this file 1:45 PM |
| | | Apr 18, 2020 |
| ***First*** time Gallo views Pitch Deck | → | **G** Guest viewed this file 11:15 PM |
| Pitch Deck is viewed by Jones shortly after Dropbox link is created | → | **AB** You viewed this file 11:08 PM |

32.     But neither Ms. Gallo nor anyone else from Nike ever responded to Jones or ever contacted him about his BALLIN March Madness campaign, his marketing materials, or Jones's BALLIN mark.

**C.     Jones establishes exclusive ownership and use of his BALLIN mark through meaningful and public commercial use.**

33.     After receiving no response from Ms. Gallo or Nike regarding his BALLIN March Madness campaign or the BALLIN mark, Jones began to discuss potential licensing agreements with other third parties.

34.     On October 20, 2021, in exchange for payment received on that date, Jones entered into a licensing agreement with a third party granting limited rights to use the BALLIN mark for purposes of printing and selling apparel containing the BALLIN mark and also to be used as the name of a podcast.

35.     On October 21, 2021, the first shirts and sweaters were ordered and printed with the BALLIN mark and received the same day:





36.    On October 30, 2021, the first shirts and sweaters containing the BALLIN mark were sold to a number of individuals at a youth basketball clinic.

37.    On December 13, 2021, the first episode of the BALLIN podcast aired to the public, and Jones's BALLIN mark was, and still is, used in the podcast's name and logo:



38.    As a result, through meaningful and public commercial use, Jones established and secured ownership of and the exclusive right to use his BALLIN mark.

**D.    Without Jones's consent or authorization, Nike uses Jones's BALLIN mark as the centerpiece of its 2022 March Madness campaign.**

39.    Upon information and belief, beginning in November 2021, while Nike was working on its marketing campaign for the 2022 NCAA Division I Basketball Tournaments, Nike began considering options for tee shirt designs to be worn by all Nike sponsored teams competing in March Madness and to be sold to the public.  And without Jones's consent or authorization, Nike decided to use the BALLIN mark as the central concept for its marketing campaign and tee shirt designs.

40.    On February 28, 2022, Jones's licensor was notified by the owner of a local promotions company that Nike was using Jones's BALLIN mark to print and distribute tee shirts to high school and college basketball programs.

41.    At this time, Jones still had not received any response from Ms. Gallo or anyone else at Nike regarding his BALLIN mark, Jones's BALLIN March Madness Campaign concepts, or Jones's Pitch Deck that was submitted to and viewed three times by Lauren Gallo in April of 2020.

42.    Later that same day, on February 28, Jones and his licensor contacted a representative from BSN, who provided a photograph of Nike's BALLIN tee shirt proof and who stated that Nike was intending to use the BALLIN mark as its 2022 March Madness campaign.

43.    Also, on or about February 28, 2022, Nike debuted its official March Madness campaign for the 2022 NCAA Division I Basketball Tournaments, including tee shirts containing the BALLIN mark:



44.    When Jones attempted to contact Lauren Gallo on February 28 and the following days to discuss Nike's unauthorized use of Jones's BALLIN mark in its March Madness campaign—just as he proposed in the BALLIN Pitch Deck sent to Ms. Gallo in April 2020—Jones received no response.  Instead, on March 2, 2022, Jones was contacted

by a lawyer from Nike's legal department, who generally denied any improper conduct by Ms. Gallo or Nike.

**E.    Nike's unauthorized use of the BALLIN mark is likely to cause confusion.**

45.    Although Nike has alleged their BALLIN tee shirts were created independently, without any reference to Jones's BALLIN mark and the promotional materials sent to Lauren Gallo in April 2020, the similarity between Nike's BALLIN March Madness tee shirts and Jones's BALLIN mark and March Madness tee shirt design is undeniable:

 

46.    Almost identical to Jones's BALLIN mark and tee shirt design, Nike's BALLIN shirts include the phrase "BALLIN" or "B ALL IN" in two-tone offsetting colors to match the color schemes of various universities, along with the Nike "Swoosh" or Jordan logo and the logo of the university.

47.    Just like Jones's BALLIN mark and tee shirt design, Nike's shirt is designed with the "B" and "IN" to be one matching color with the "ALL" in a second color to denote

both "BALLIN" and "B · ALL · IN," and the design includes the school's logo arranged just beneath the mark towards the center of the shirt.

48.    Likewise, although Nike has alleged its BALLIN tee shirts are actually meant to denote "BALLIN" and "BALL · IN" rather than "B · ALL · IN," the evidence and statements from retailers and consumers will show otherwise:










**F.    Nike's unauthorized use of the BALLIN mark has saturated the marketplace completely diminishing the value of Jones's senior mark.**

49.    In addition to distributing its BALLIN tee shirts to the Nike sponsored schools competing in March Madness, Nike's shirts were also printed, distributed, and sold to various high school basketball programs and club basketball teams through various distribution companies including BSN:




50.     BSN currently has distribution agreements with at least eight women's and men's basketball programs that competed in the 2022 March Madness tournaments:



51.     Nike also distributed or licensed its BALLIN tee shirts to various retailers including Dick's, Fanatics, Inc., and others, who are currently selling the shirts both online and in retail locations across the entire United States.



52.    Dick's, in particular, has also been selling Nike's unauthorized BALLIN tee shirts at several retail stores across the country, including its location in Friendswood, Texas:

 

53.    Moreover, because Nike created its BALLIN tee shirt to be used as the official warm up shirt or "bench tee" by each of the Nike sponsored schools competing in March Madness, Nike's shirts have, by design, been repeatedly showcased in broadcasts, photographs, and recordings throughout the entire 2022 March Madness tournament:



54.    Accordingly, Defendants' unauthorized use of Jones's BALLIN mark has saturated the market to such a great extent that Jones's mark, in essence, has become worthless.[9]

55.    Although Nike has alleged their BALLIN March Madness tee shirt was created, coincidentally, without any reference to Jones's BALLIN mark and BALLIN tee shirt design, the striking similarities between the two are undeniable, if not nearly identical.

56.    The actual evidence of reverse confusion or at least the likelihood of confusion—across the entire United States—shows that even if Nike did somehow independently create its BALLIN campaign and tee shirts by pure coincidence, Nike's unauthorized use still infringes on Jones's ownership of his senior BALLIN mark.

57.    BSN and Dick's are distributers and retailers of Nike's infringing goods, who have an apparent or actual partnership with Nike and have authority to bind one another in transactions with third parties or exercise joint ownership or control over Nike's infringing products, including Nike's BALLIN tee shirts.

58.    Nike, BSN, and Dick's are thus currently manufacturing, distributing, and selling tee shirts and apparel that infringe on Jones's intellectual property rights and have caused Jones to suffer significant actual damages.

59.    Jones's "BALLIN" mark is senior to Nike's unauthorized use of the "BALLIN" mark in its 2022 March Madness campaign, and Defendants' actions have caused, or at least are likely to cause, confusion in the marketplace.

---

[9] For example, there can hardly be any dispute that companies like Under Armour and Adidas would no longer be interested in licensing or purchasing Jones's senior BALLIN mark, given Defendants' unauthorized, nationwide saturation of the marketplace with Nike's junior BALLIN mark.

60.     Defendants have thus saturated the market with Nike's unauthorized, junior mark, which has stripped Jones's senior mark of all value.

61.     Accordingly, Jones has been forced to initiate this action to protect his intellectual property rights and recover the damages he has suffered as a result of Defendants' unfair competition.

## V.
### CAUSES OF ACTION

**Count 1:     Trademark Infringement, Unfair Competition, and False Designation of Origin in violation of 15 U.S.C. § 1125(a)**

62.     Jones incorporates and realleges the foregoing paragraphs by reference as if fully set forth herein.

63.     Jones is the owner and senior user of Jones's distinctive BALLIN mark, which Jones has sufficiently used in commerce.

64.     In connection with Defendants' advertisement, promotion, distribution, and sales of their goods and/or services, Defendants have used in commerce, and continue to use in commerce, reproductions, copies, and/or colorable imitations of Jones's BALLIN mark that are deceptively similar to Jones's BALLIN mark.

65.     Defendants' unauthorized use of Jones's BALLIN mark, or colorable imitations thereof, is likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, or approval of Defendants' products, and is likely to falsely suggest a sponsorship, connection, or association of Defendants and their products, services, and/or commercial activities with Jones.

66.    Likewise, Defendants' unauthorized use of Jones's BALLIN mark, or colorable imitations thereof, is likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, or approval of Jones's products and commercial activities (and those of his licensor), and is likely to falsely suggest a sponsorship, connection, or association of Jones and his products, services, and/or commercial activities with Defendants.

67.    In connection with Defendants' advertisement, promotion, distribution, and sales of their goods and/or services, Defendants have affixed, applied, and used false designations of origin and false and misleading descriptions and representations, including Jones' BALLIN mark, or colorable imitations thereof, which tend to falsely describe the origin, sponsorship, association, or approval by Jones of Defendants' sales, marketing, goods, and services.

68.    Defendants' use of Jones' BALLIN mark, or colorable imitations thereof, in Defendants' goods and/or services constitutes false descriptions and representations tending to falsely describe or represent Defendants' goods and services as being either authorized, sponsored, affiliated, or associated with Jones or, alternatively, that Defendants are the true origin of Jones' products and services, and Jones is the infringer.

69.    Defendants' actions thus constitute trademark infringement, false designation of origin, passing off, unfair competition, and reverse confusion in violation of Section 43(a) of the Lanham Act.[10]

---

[10] *See* 15 U.S.C. § 1125(a).

70.     Defendants' acts constitute the use in commerce of false designations of origin and false or misleading descriptions or representations, tending to falsely or misleadingly describe or represent Defendants' goods and services as those of Jones, or vice versa, in violation of Section 43(a) of the Lanham Act.[11]

71.     Upon information and belief, Defendants' conduct as alleged herein is willful, and intended to, and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants and their goods and services with Jones and Jones's goods and services.

72.     As a result of Defendants' actions, Jones has suffered actual and significant damages, for which Defendants are liable.

73.     Jones is thus entitled to an award of actual damages, including but not limited to a reasonable royalty rate, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of this action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest at the highest rate permitted by law.

**Count 2:      Unjust Enrichment and Quantum Meruit**

74.     Jones incorporates and realleges the foregoing paragraphs by reference as if fully set forth herein.

75.     Because Defendants have received benefits, which would be unjust for Defendants to retain, Defendants are also liable for unjust enrichment and quantum meruit.

---

[11] *See* 15 U.S.C. § 1125(a).

Jones supplied Defendants (either directly or through Nike, their representatives, or other third parties) with the goods, services, and related items, including Jones's BALLIN mark, under circumstances by which Defendants knew, or had reason to know, Jones expected to be paid by Defendants.

76.     Defendants accepted, used, and enjoyed the goods, services, and related items, and by doing so without paying Jones a fair sum, Defendants have been unjustly enriched.

77.     Accordingly, Defendants are jointly and severally liable to Jones for the reasonable value of, including a reasonable royalty rate for, the goods, services, and related items that Jones supplied to Defendants.

## VI.
### JURY DEMAND

78.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Jones respectfully demands a trial by jury on all issues properly triable by a jury in this action.[12]

## VII.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Landon T. Jones a/k/a Adobe Bryant, respectfully prays that Defendants be cited to appear and answer in this action, and upon final hearing or trial, that Plaintiff have judgment against Defendants for all damages and relief requested herein including the following:

a.      Plaintiff's actual damages, including but not limited to a reasonable royalty rate;

---

[12] In accordance with the local Rules of Practice of the United States District Court for the Southern District of Texas Galveston Division, a copy of the Galveston District Court Rules of Practice will be served on all Defendants and parties of record in this action along with the Summons and a copy of Plaintiff's Original Complaint.

b.    Statutory damages, including Defendants' profits, and enhanced damages and profits;

c.    Attorneys' fees, expenses, and costs of court;

d.    Prejudgment and post-judgment interest at the highest rate allowed by law; and

e.    Such other and further relief to which Plaintiff may be justly entitled.

Dated: March 31, 2022                    Respectfully submitted,

                                         PATEL ANDERSON LLP


                                         /s/ Pimal A. Patel
                                         **Pimal A. Patel**, *Attorney in Charge*
                                         Texas Bar No. 24102335
                                         S.D. Tex. No. 3025392
                                         pimal@patelanderson.com
                                         **Joseph R. Anderson**
                                         Texas Bar No. 24101446
                                         S.D. Tex. No. 3018440
                                         joseph@patelanderson.com
                                         7324 Southwest Freeway, Suite 560
                                         Houston, Texas 77074
                                         Telephone: (713) 893-3637
                                         Facsimile: (713) 456-2521

                                         **ATTORNEYS FOR PLAINTIFF,
                                         LANDON T. JONES A/K/A
                                         ADOBE BRYANT**