United States District Court
Southern District of Texas
**ENTERED**
February 20, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| LANDON T. JONES, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:22-cv-00103 |
| | § | |
| NIKE, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendants' Motion for Summary Judgment. Dkt. 32. Having reviewed the briefing, the record, and the applicable law, I recommend the motion be **GRANTED**.

## BACKGROUND

Plaintiff Landon T. Jones ("Jones") is a self-employed "marketing and creative consultant, graphic designer, photographer, and filmmaker" who lives in Wisconsin. Dkt. 1 at 1. In December 2019, Jones developed a graphic design concept that he hoped Defendant Nike, Inc. ("Nike") would use in some capacity for the National Collegiate Athletic Association ("NCAA") Division I Basketball Championships, widely known as "March Madness."[1] That concept is the word "ballin," featuring letters designed to be read as "be all in."

On April 18, 2020, Jones sent an unsolicited direct message through Instagram to Lauren Gallo ("Gallo"), a Nike marketing employee. That message included a link to the designs Jones created for the "ballin" concept. The designs Jones sent Gallo included this one:

---

[1] Each Spring, the NCAA hosts men's and women's single-elimination basketball tournaments featuring the top 68 Division I teams competing for the national championship. Every year, millions watch and predict the winners of each game. *See* Daniel Wilco, *What is March Madness: The NCAA tournament explained*, NCAA (Apr. 4, 2023), https://www.ncaa.com/news/basketball-men/bracketiq/2023-03-15/what-march-madness-ncaa-tournament-explained.



Dkt. 38-2 at 2. Jones also sent images for a number of t-shirt designs utilizing the "ballin" concept in two-toned color schemes intended to match the colors of various universities.



Dkt. 38 at 4. Jones did not receive a response from Gallo or any Nike employee. Gallo maintains that she never opened or shared the link.

On October 20, 2021, Jones allowed his friend, Harry Boyce ("Boyce"), to use the "ballin" concept for "the manufacture and sale of clothing and use as the name and logo of a podcast." Dkt. 38-1 at 36. Boyce, who owns and operates a basketball training gym in Hobart, Wisconsin, paid Jones $1,000 in return. On October 21, 2021 and November 11, 2021, Boyce placed orders to Tundra Apparel and Promotions ("Tundra") for a total of 83 t-shirts and hoodies that displayed the

2

"ballin" concept above a "#ballin" hashtag.[2] The t-shirts and hoodies looked like this:



Dkt. 1 at 11. Boyce says he sold 55 to 65 of the 83 tops at his Wisconsin gym between October 2021 and August 2022. The remaining garments he either keeps in inventory, gives away to friends, or holds onto for himself.

As part of his deal with Boyce, Jones also designed a modified "ballin" logo that he allowed Boyce to use for a podcast. This logo features a microphone in place of the "i."



Dkt. 1 at 12. Boyce's podcast aired four times between March 5, 2022 and May 27, 2022.

In February 2022, Nike publicly unveiled its 2022 March Madness campaign known as "BALL IN." This marketing effort included specially designed shirts to be worn by players during pre-game warm-ups and while sitting on the bench. On the shirt design, the words "ball" and "in" are on two separate lines. The

---

[2] Tundra is owned by Chris McKeefry ("McKeefry"), who is a friend of both Jones and Boyce. Combined, the two orders cost $822.90. Boyce never paid McKeefry but instead provided free basketball training to McKeefry's daughter.

3

letters "B" and "IN" are of the same color, and each university's logo and colors are incorporated with a Nike "swoosh" logo or a Nike "Jumpman" logo.



Dkt. 32 at 15.

Nike announced to its employees that "BALL IN" "comes from the **all in** mantra . . . as teams continue to deal with disruptions from their season due to Covid." Dkt. 32-28 at 5. Nike said the term "ballin" means "playing your best basketball," and noted that "ball in" is a "common term used in basketball to signal the start of the game/play." *Id.* at 5–6. Nike promoted the "BALL IN" shirts on social media. Defendant Dick's Sporting Goods, Inc. ("DSG") marketed the shirts throughout March 2022 as an authorized Nike retailer. Nike also authorized Defendant BSN Sports, LLC ("BSN") "to print Nike's BALL IN graphic on Nike tees and distribute to college, high school, and other teams." Dkt. 32 at 15.

In February 2022, Jones saw the Nike "BALL IN" shirts and thought that Nike had stolen his "ballin" concept that he sent to Gallo nearly two years before. In March 2022, Jones filed this lawsuit against Nike, DSG, and BSN (collectively, "Defendants"). He originally asserted two causes of action: (1) trademark infringement under the Lanham Act; and (2) a state law cause of action for unjust enrichment and quantum meruit. In the summer of 2023, Jones abandoned the unjust enrichment and quantum meruit claim. *See* Dkt. 32-26 at 2[3]. At this point,

---

[3] Specifically, Jones's counsel told Defendants' counsel that Jones "is going to withdraw his unjust enrichment claim" and that Jones's counsel would "make a note of that in our response to the Motion for Summary Judgment." *Id.* Jones made no such note in his response to Defendants' Motion for Summary Judgment. Accordingly, he has not withdrawn his unjust enrichment claim on the record. But he also does not address unjust enrichment or quantum meruit in his response. Withdrawn or not, the claim would fail

4

the only remaining claim against Defendants is for trademark infringement under the Lanham Act.

Additionally, Nike has filed counterclaims against Jones, seeking declaratory judgment that "Jones does not own a protectible trademark" and that "Nike does not unfairly compete and does not infringe Jones's purported common law trademark rights." Dkt. 16 at 37, 39.

Defendants have moved for summary judgment on Jones's trademark infringement claim. In that same motion, Nike moved for summary judgment on its counterclaims for declaratory judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.*

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once satisfied, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial. *See id.* at 324. "[T]he non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of its case for which it will bear the burden of proof at trial." *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir.

---

in any event. Even if Jones were to *prevail* on his trademark infringement claim, an unjust enrichment award would not be appropriate because "there is simply no indication that [Nike] attempted to 'palm off' its ["BALL IN" merchandise] as those of [Jones]," nor is there "any evidence whatsoever of [Nike]'s using [Jones's] good will to sell its ["BALL IN" merchandise]." *Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 695–96 (5th Cir. 1992) (holding that a trademark infringer must use the reputation and goodwill of the mark's owner for the owner to recover on an unjust enrichment claim).

2007) (quotation omitted). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

## JONES'S TRADEMARK INFRINGEMENT CLAIM

**A.  LEGAL STANDARD**

A trademark is defined by the Lanham Act as "'any word, name, symbol, or device, or any combination thereof' that is used or intended to be used 'to identify and distinguish' one's goods 'from those manufactured or sold by others.'" *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 185 (5th Cir. 2018) (quoting 15 U.S.C. § 1127). A plaintiff establishes trademark infringement liability under the Lanham Act by showing that the defendant "uses in commerce any word, term, name, symbol, or device" that "is likely to cause confusion, or to cause mistake" about the "origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A)). To succeed on an action for trademark infringement under the Lanham Act, Jones must establish that: "(1) [he] possesses a legally protectable trademark and (2) [Defendants'] use of this trademark creates a likelihood of confusion as to source, affiliation, or sponsorship." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (quotation omitted). I will briefly discuss the requirements of each prong.

### 1.  *Possession of a Legally Protectable Mark*

It is firmly established that "[a] trademark infringement action cannot be sustained unless the mark is legally protectable." *Viacom Int'l*, 891 F.3d at 185; *see also Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) ("[T]he threshold requirement [is] that the plaintiff must possess a protectible mark, which must be satisfied before infringement can be actionable."). "To be eligible for protection, a mark must be 'capable of distinguishing the applicant's goods from those of others.'" *Hous. Cigar All. v. Off. Hous. Cigar Wk. LLC*, No. H-20-

6

4115, 2021 WL 1416875, at *7 (S.D. Tex. Apr. 14, 2021) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). Even in the absence of trademark registration (as is the case here), a party may acquire trademark ownership rights through prior use of a mark in commerce. *See Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1264–65 (5th Cir. 1975). "[N]either conception of the mark, nor advertising alone establishes trademark rights at common law." *Id.* at 1265 (citations omitted). Instead, "[o]wnership of a mark requires a combination of both appropriation and use in trade," and it "accrues when goods bearing the mark are placed on the market." *Id.* at 1264–65. "The talismanic test is whether or not the mark was used in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Windows User, Inc. v. Reed Bus. Publ'g, Ltd.*, 795 F. Supp. 103, 108 (S.D.N.Y. 1992) (quotation omitted).

### 2. *Likelihood of Confusion*

"The second prong of the trademark infringement test requires [Jones] to show that [Defendants'] use of the mark creates a likelihood of confusion as to source, affiliation, or sponsorship." *Streamline Prod. Sys.*, 851 F.3d at 453 (quotation omitted). "In a trademark infringement action, the paramount question is whether one mark is likely to cause confusion with another." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009). "Likelihood of confusion means more than a mere possibility of confusion; rather, the plaintiff must demonstrate a probability of confusion." *Streamline Prod. Sys.*, 851 F.3d at 453 (quotation omitted). The Fifth Circuit assesses likelihood of confusion by analyzing a non-exhaustive list of factors known as the "digits of confusion," which include

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) any evidence of actual confusion, and (8) the degree of care exercised by potential purchasers.

7

*Id.* (cleaned up). "No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors." *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008). "The digits may weigh differently from case to case, depending on the particular facts and circumstances involved." *Streamline Prod. Sys.*, 851 F.3d at 453 (cleaned up).

**B.  POSSESSION OF A LEGALLY PROTECTABLE MARK**

Defendants insist that Jones's trademark infringement claim fails under both prongs—possession of a legally protectable mark and likelihood of confusion. Because I find that Jones is unable to create a genuine issue of material fact concerning possession of a legally protectable mark, I need not reach the likelihood of confusion prong and its digits of confusion analysis.

Defendants make two main arguments as to why Jones cannot establish that he possesses a legally protectable mark in "ballin": (1) Jones's limited commercial use of "ballin" is *de minimis* and thus confers no trademark rights; and (2) Jones cannot demonstrate that the mark "ballin" was used "in commerce" to qualify for Lanham Act protection. I find both arguments persuasive.

### 1. *Jones's limited commercial use of "ballin" is* de minimis *and thus confers no trademark rights.*

"[T]he right to a particular mark grows out of its use, not its mere adoption." *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918); *see also* Uli Widmaier, *Use, Liability, and the Structure of Trademark Law*, 33 HOFSTRA L. REV. 603, 619 (2004) ("Use is the decisive element for establishing trademark rights."). "The exclusive right to a trademark belongs to one who first uses it in connection with specified goods." *Blue Bell*, 508 F.2d at 1265; *see also Union Nat. Bank of Tex., Laredo, Tex. v. Union Nat. Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842–43 (5th Cir. 1990) ("The first one to use a mark is generally held to be the 'senior' user and is entitled to enjoin other 'junior' users from using the mark, or one that is deceptively similar to it."). "The mere fact that a business is small and

8

its trade modest does not necessarily militate against its being an established business capable of acquiring goodwill and rights in a trademark." *Sheila's Shine Prods., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 123 (5th Cir. 1973). "[E]ven a single use in trade may sustain trademark rights if followed by continuous commercial utilization." *Blue Bell, Inc.*, 508 F.2d at 1265.

"[S]poradic and insubstantial transactions" are, however, insufficient to establish any trademark rights. *Burlington N. Santa Fe Corp. v. Purdy*, No. 98-11485, 1999 WL 1328011, at *1 (5th Cir. Dec. 7, 1999); *see also Gulfstream Media Grp. v. PD Strategic Media, Inc.*, No. 12-cv-62056, 2013 WL 1891281, at *4 (S.D. Fla. May 6, 2013) ("[*D*]*e minimis* use of a mark does not suffice to support ownership rights."). This is because "sporadic or minimal uses of a mark may indicate the mere intent to reserve a mark for later use rather than the present commercial utilization of the mark." *Allard Enters. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 358 (6th Cir. 1998). To this end, the Fifth Circuit has emphasized that "[n]ominal or token sales to personal friends do not constitute a *bona fide* commercial use of a trademark." *Burlington N. Santa Fe*, 1999 WL 1328011, at *1. "A 'mere trickle' of business over a course of years [also] does not constitute the kind of bona fide use intended to afford a basis for trademark protection." *Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, No. 3:16-cv-1217, 2017 WL 177651, at *8 (N.D. Tex. Jan. 16, 2017) (quotation omitted); *see also Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1256 (9th Cir. 2022) ("[T]o qualify as establishing use in commerce, and not merely a token use to reserve rights in a mark, any such modest initial sales must have been made in a bona fide transaction, and they must be accompanied or followed by activities which would tend to indicate a continuing effort or intent to continue such use and place the product on the market on a commercial scale within a time demonstrated to be reasonable in the particular trade." (quotation omitted)); *Cir. City Stores v. CarMax, Inc.*, 165 F.3d 1047, 1055 (6th Cir. 1999) (citing "the long-standing rule that ownership rights stem only from deliberate and continuous rather than

9

sporadic use of a mark"); *Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531, 534 (2d Cir. 1964) ("The United States's pre-war sale of a few hundred cases of Dom Perignon . . . was scarcely enough to reserve this unregistered mark for all time against others who might also have the idea of naming their product after the putative father of champagne").

In this case, Jones allowed Boyce to use the "ballin" concept on clothing that Boyce sold out of his gym in Hobart, Wisconsin. Altogether, Boyce printed the "ballin" mark on 83 shirts, hoodies, and sweatshirts. Only 55 to 65 of those garments were sold. Those sales took place from October 2021 to August 2022 out of one Wisconsin location. No other shirts, hoodies, or other apparel were ever printed, and released into the commercial market. And no sales ever took place outside of Hobart, Wisconsin. This is, as Defendants argue, "a quintessential case of *de minimis* use that is insufficient to establish trademark rights as a matter of law." Dkt. 32 at 19; *see also Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 265 (S.D.N.Y. 2005) (use of the mark "opening day" not entitled to trademark protection when "the only evidence of defendant's use of the mark . . . is a single invoice for fifty shirts sold by defendant . . . in August 1991 for a total of $300.00"); *Smith v. Ames Dept. Stores, Inc.*, 988 F. Supp. 827, 839 (D.N.J. 1997) (finding that the sale of 552 t-shirts, 274 logo t-shirts, and 324 hats geographically dispersed in seven states did not achieve priority because "these sales do not come close to the minimum level necessary to achieve market penetration"), *aff'd*, 172 F.3d 860 (3d Cir. 1998).

Jones maintains that his marketing of apparel bearing the "ballin" moniker is sufficient to establish exclusive rights in the "ballin" mark. Not true. Jones's unsolicited Instagram pitch to Gallo, or any other individuals, does not magically create any trademark rights. Jones "must have done far more than use the mark in discussions, solicitations, shipments, or even in some sales." *Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 936 (S.D. Tex. 2004); *see also* 2 J. Thomas McCarthy, *An Idea for a Trademark Is Not a Trademark*, MCCARTHY ON

10

TRADEMARKS & UNFAIR COMPETITION § 16.11 (5th ed. 2023) ("It is a basic rule of trademark law that a concept or an idea for a new trademark is not itself a 'trademark.' . . . . This rule is the reason that in most situations, an advertising agency that develops an idea for a designation to be used as a trademark as part of an advertising campaign does not own trademark rights in that designation."). "Trademark rights are not established by goals and dreams. They are established only through prior use of the mark in the marketplace." *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1089 (C.D. Cal. 2003).

To the extent Jones relies on the use of "ballin" as the name and logo of a podcast to support his trademark infringement claim, he is out of luck. That is because the first installment of the "ballin" podcast and use of the podcast logo occurred on March 5, 2022—*after* Nike debuted its "BALL IN" campaign. *See Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015) ("Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users.").

To summarize, Jones's use of the mark "ballin" amounted to the sale of, at most, 65 garments in a single Wisconsin city. This is *de minimis* use as a matter of law. As a result, Jones does not own a legally protected mark in "ballin," and his trademark infringement claim fails for that reason alone.

### 2. *Jones cannot demonstrate that the mark "ballin" was used "in commerce" to qualify for Lanham Act protection.*

Jones's trademark claim also fails because he is unable to establish that he used the mark "ballin" "in commerce" as required by the Lanham Act.

To establish a trademark infringement claim under the Lanham Act, Jones must show that he "*uses in commerce* any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact." 15 U.S.C. § 1125(a)(1) (emphasis added). "The word "commerce" means all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. This obviously requires

11

interstate activity. *See Caminetti v. United States*, 242 U.S. 470, 491 (1917) ("[T]he authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question."). Congress's authority under the Commerce Clause may extend to purely intrastate activity, but only if that activity substantially affects interstate commerce. *See World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 488 (5th Cir. 1971) ("The judicial interpretation given by this circuit is that 'in commerce' is intended to refer to the impact that the infringement has upon the interstate use of the trademark and not to mean that an infringer is immune from interference with an interstate trademark so long as he keeps his infringement within the confines of a state."); *Finger Furniture Co. v. Mattress Firm, Inc.*, No. H-05-0299, 2005 WL 1606934, at *3 (S.D. Tex. July 1, 2005) ("[I]f intrastate activity directly or substantially affects interstate commerce, then it satisfies the in commerce requirement of the Lanham Act.").

I agree with Defendants that Jones has not presented any evidence indicating that Jones's use of the "ballin" concept substantially affects interstate commerce. It is undisputed that the only sales of the apparel displaying the "ballin" mark took place at a single Wisconsin gym. No sales occurred outside of Wisconsin. Furthermore, nothing in the summary judgment record suggests that any of those customers who purchased "ballin" apparel were out-of-town clientele. To the contrary, Boyce testified that the "ballin" apparel sales were targeted to "local people to kind of get on to it." Dkt. 38-3 at 32.

It is true, as Jones points out, that "seemingly *de minimis* intrastate activities can influence interstate commerce, be regulated by Congress, and thus count as uses in commerce for purposes of the Lanham Act." *Perry v. H. J. Heinz Co. Brands*, 994 F.3d 466, 474 (5th Cir. 2021). But this legal concept is of no help to Jones in this case. That is because there is no evidence suggesting that the sales of approximately 65 garments at a gymnasium in Wisconsin had *any* impact whatsoever on interstate commerce. In short, the sales of "ballin" apparel that

Jones references in his summary judgment response simply do not qualify as "uses in commerce" under the Lanham Act. This is another, independent reason why Defendants are entitled to summary judgment on the trademark infringement claim.

## NIKE'S COUNTERCLAIMS

In its Answer, Nike asserted two Counterclaims against Jones under the Declaratory Judgment Act. *See* 28 U.S.C. § 2201. Nike seeks the following declarations: (1) "Jones does not own a protectible trademark"; and (2) "Nike does not unfairly compete and does not infringe Jones's purported common law trademark rights." Dkt. 16 at 37, 39.

"The Declaratory Judgment Act is designed to afford parties, threatened with liability, but otherwise without a satisfactory remedy, an early adjudication of an actual controversy." *Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990). I have "broad discretion to grant (or decline to grant) declaratory judgment." *Wilton v. Seven Falls Co.*, 41 F.3d 934, 935 (5th Cir. 1994). "Courts in the Fifth Circuit regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the claims in the lawsuit." *Am. Equip. Co. v. Turner Bros. Crane & Rigging, LLC*, No. 4:13-cv-2011, 2014 WL 3543720, at *4 (S.D. Tex. July 14, 2014) (collecting cases). Because the issues in the lawsuit have now been resolved and "[Nike's] counterclaim[s] [are] a mirror image of [Jones's] Lanham Act claim," the counterclaims should be denied as moot. *Elepreneurs Holdings, LLC v. Benson*, No. 4:21-cv-26, 2021 WL 5140769, at *5 (E.D. Tex. Nov. 4, 2021).

## CONCLUSION

For the reasons explained above, I recommend that Defendants' Motion for Summary Judgment (Dkt. 32) be **GRANTED**. This case should be dismissed.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R.

CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 20th day of February 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE