# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION

|  |  |
|---|---|
| **LANDON T. JONES a/k/a ADOBE BRYANT,**<br><br>         *Plaintiff,*<br>v.<br><br>**NIKE, INC., BSN SPORTS, LLC and DICK'S SPORTING GOODS, INC.,**<br><br>         *Defendants.* | Civ. Action No. 3:22-cv-00103-JVB-AME |
| **NIKE, INC.,**<br><br>         *Counter-Plaintiff,*<br>v.<br><br>**LANDON T. JONES a/k/a ADOBE BRYANT**<br><br>         *Counter-Defendant.* |  |

## NIKE INC.'S MOTION FOR ATTORNEYS' FEES UNDER THE LANHAM ACT

# **TABLE OF CONTENTS**

I.     NATURE AND STAGE OF THE PROCEEDING ................................................... 1

II.    STATEMENT OF ISSUES ................................................................................... 1

III.   SUMMARY OF ARGUMENT ............................................................................. 2

IV.   STATEMENT OF FACTS ................................................................................... 4

      a.  Jones' Bad Faith Pre-Litigation Conduct .......................................... 4

      b.  Nike's Investigation and Jones' Lawsuit .......................................... 7

      c.  Jones' Exceedingly Weak Trademark and Related Claims ............................... 8

V.    ARGUMENT ................................................................................................ 12

      a.  Legal Standard (15 U.S.C. § 1117) ................................................. 12

      b.  Nike is Entitled to Attorneys' Fees Under 15 U.S.C. § 1117 .......................... 15

      c.  Nike is Entitled to the Following Fees ............................................ 19

VI.   CONCLUSION .............................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*All. for Good Gov't v. Coal. for Better Gov't*,
919 F.3d 291 (5th Cir. 2019) ............................................................... 2, 12, 20

*Apex Int'l, LLC v. Trennepohl*,
2021 WL 5658959 (N.D. Tex. Nov. 3, 2021) ............................................ 20

*Baker v. DeShong*,
821 F.3d 620 (5th Cir. 2016) ................................................................... 13

*Ballero v. 727 Inc.*,
744 F. App'x. 871 (5th Cir. 2018) ........................................................ 14, 17

*Farouk Sys., Inc. v. AG Glob. Prod., LLC*,
2016 WL 6037231 (S.D. Tex. Oct. 14, 2016) .................................... 13, 16, 18

*GeoDynamics, Inc. v. DynaEnergetics US, Inc.*,
2017 WL 6559170 (E.D. Tex. Dec. 21, 2017) ...................................... 14, 18

*Johnston v. Kroeger*,
2023 WL 5983914 (W.D. Tex. Sept. 14, 2023) .......................................... 12

*Octane Fitness LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ................................................................................. 13

*Procter Gamble Co. v. Amway Corp.*,
280 F.3d 519 (5th Cir. 2002) .................................................................... 20

*RLIS, Inc. v. Cerner Corp.*,
2015 WL 5178072 (S.D. Tex. Sept. 3, 2015) ............................................. 14

*RRK Foods Inc. v. Sree Nidhi Corp.*,
2022 WL 3636676 (N.D. Tex. Aug. 23, 2022) ........................................... 15

*Savage Tavern, Inc. v. Signature Stag, LLC*,
2022 WL 1471442 (N.D. Tex. May 10, 2022) .................................... *passim*

*Tinker, Inc. v. Poteet*,
2018 WL 4189705 (N.D. Tex. Aug. 9, 2018) ............................................. 16

*Tortilla Town, Inc. v. Tortilla Town, LLC*,
2023 WL 3222799 (W.D. Tex. May 3, 2023) ............................................ 19

*W. Falcon, Inc. v. Moore Rod & Pipe, LLC*,
 2015 WL 3823629 (S.D. Tex. June 18, 2015) ................................................ 14, 16, 17

**Statutes**

15 U.S.C. § 1117 ..........................................................................................................*passim*

28 U.S.C. § 1920 ........................................................................................................... 1

15 U.S.C. § 1125(a) ..................................................................................................... 1

**Other Authorities**

Fed. R. Civ. P. 54(d) .................................................................................................... 1

Pursuant to Fed. R. Civ. P. 54(d) and 15 U.S.C. § 1117(a), Defendant Nike, Inc. respectfully moves for its reasonable attorneys' fees in this Motion.

## I.  NATURE AND STAGE OF THE PROCEEDING

On March 31, 2022, Plaintiff Landon T. Jones a/k/a Adobe Bryant ("Jones") filed this action against Nike, Inc. ("Nike"), BSN Sports, LLC ("BSN"), and Dick's Sporting Goods, Inc. ("DSG") (together, "Defendants"), alleging federal trademark infringement and unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and common law unjust enrichment and quantum meruit.  (Doc. 1.)  On June 27, 2023, Jones voluntarily dismissed his common law claims.  (*See* Doc. 32-26, Ex. 24.)

On June 30, 2023, Defendants moved for summary judgment on Jones' remaining Lanham Act claims.  (Doc. 32.)  On February 20, 2024, Magistrate Judge Edison issued a report and recommendation that Defendants' motion for summary judgment be granted, which this Court adopted, entering final judgment in Defendants' favor on March 7, 2024.  (Docs. 46, 50.)  This made Defendants the prevailing party under Rule 54, enabling Nike to seek its reasonable attorneys' fees.[1]

Nike now moves to recover the reasonable attorneys' fees and costs it incurred defending the Defendants against Jones' meritless claims.

## II.  STATEMENT OF ISSUES

1.   Whether Defendants are the "prevailing parties" in this action.  In the Lanham Act context, a prevailing party is "a party in whose favor judgment is rendered"

---

[1] Nike moved for costs under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920 on March 21, 2024.  (Doc. 51.)

or "one who has been awarded some relief by the court." *All. for Good Gov't v. Coal. for Better Gov't*, 919 F.3d 291, 295 n.16 (5th Cir. 2019).

2.       Whether this action is "exceptional" pursuant to 15 U.S.C § 1117(a), thereby entitling Nike to an award of its reasonable attorneys' fees.  An exceptional case is one that, upon the totality of circumstances, "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Savage Tavern, Inc. v. Signature Stag, LLC***,** 2022 WL 1471442, at *6 (N.D. Tex. May 10, 2022) (citing *Octane Fitness LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 554 (2014)).

3.       Whether Nike is entitled to recover its reasonable attorneys' fees in the requested amount of $570,481.43.  Pursuant to 15 U.S.C. § 1117(a), the prevailing party "in exceptional cases" may be awarded its "reasonable attorneys' fees."

### III.    <u>SUMMARY OF ARGUMENT</u>

Jones knew before he ever filed this action that he had no trademark rights to assert against Nike.  This dispute did not even begin as a trademark infringement claim. In February 2022, right before Jones, a Wisconsin resident, filed this lawsuit, he began to harass and cyberbully a Nike employee named Lauren Gallo.  Without evidence, Jones publicly, repeatedly, and aggressively accused Ms. Gallo of stealing his marketing concept that featured use of the word "ballin."  Jones claimed that Gallo received his marketing concept via an unsolicited Instagram message in 2020 and passed it along to Nike, who used it without permission two years later for a Spring 2022 March Madness

2

bench tee that featured the words "BALL IN."

Despite Nike's efforts to explain to Jones that (1) neither Nike nor Ms. Gallo had ever seen his unsolicited proposal for a "ballin" marketing concept, and that, regardless (2) Jones could not legally assert rights based on an alleged "idea theft," Jones successfully rallied social media users to harass Ms. Gallo. He repeatedly called her a racist and a thief for supposedly using his "ballin" concept on Nike's 2022 March Madness bench tee. Throughout these angry and inflammatory social media videos and posts, however, Jones never once claimed that "ballin" was his trademark, that he had previously licensed "ballin" for apparel, or that Nike's use of "BALL IN" was confusingly similar to his own prior commercial use.

Given this background, Nike was surprised when Jones abruptly filed a complaint for Lanham Act infringement premised on a bogus claim that he owned a trademark for the word "ballin," a common colloquialism used in basketball and pop culture. According to Jones, he gave his friend permission to sell a maximum of 65 tops displaying "ballin" on the center of the shirt; the tops were sold exclusively in only one location (a gym) in Hobart, Wisconsin. These tops were the totality of Jones' supposed use of "ballin" on any goods offered or sold before February 2022. Jones sent a copy of his complaint to Nike's counsel the day it was filed, demanding over $600,000 to resolve the case.

Ms. Gallo's supposed "idea theft" was not even part of Jones' claims.

Jones not only sued Nike, but he also dragged two of Nike's retail partners into the fray, whom Nike indemnified. Nike was therefore forced to defend three parties against Jones' frivolous claims that his (unsubstantiated) sale of 65 tops in a Hobart, Wisconsin

gym created actionable, nationwide, trademark rights, and that Nike's bench tee somehow infringed those rights.  As a trademark infringement plaintiff, Jones had the burden to establish both (1) ownership of a protectable mark and (2) a likelihood of consumer confusion between the parties' goods as a result of Nike's use of "BALL IN."  Jones' claims of trademark ownership were so weak that this Court granted summary judgment to Defendants on the first factor, not even needing to reach the issue of confusion.

The Lanham Act's exceptional case provision permits a prevailing party in a trademark action to recover its attorneys' fees in exceptional cases.  As discussed herein, this meritless action fits comfortably into the legal standard for exceptionality.  The Court should therefore grant Nike's motion and award Nike its reasonable attorneys' fees.

## IV.   <u>STATEMENT OF FACTS</u>

### a.  **Jones' Bad Faith Pre-Litigation Conduct**

In late February 2022, Jones began to cyberbully Lauren Gallo, Nike's Senior Director of Brand Marketing & Creative, with false accusations of idea theft.  (*See* Doc. 32-1 at ¶¶ 6-7.)  Specifically, Jones saw Nike's 2022 March Madness "bench tee"[2] and decided that Nike, via Ms. Gallo, stole his idea for a sports campaign by virtue of an unsolicited Instagram direct message that he sent years earlier to Ms. Gallo.  (Doc. 1 at ¶ 4.)  That message supposedly contained a Dropbox link to a design deck with the

---

[2] Each November, Nike develops a campaign for the NCAA March Madness basketball tournament.  The "bench tees" are shirts that Nike-sponsored players wear over their game jerseys during warmups, and which are sold to consumers through Nike's brick-and-mortar and e-commerce direct retail channels and through authorized retailers.  (*See* Doc. 32 at 6-7.)

"ballin" marketing concept.  (*Id.*)  Jones immediately took to the Internet to smear Ms. Gallo and accuse her of personally stealing his idea, all while displaying her name and social media username, and encouraging his followers to join in the attack.  (*Id.*; *see also* Duvdevani Decl. at ¶ 3, Ex. 1.)

Prior to this action, Nike investigated Jones' claim and determined that it was baseless.  Ms. Gallo's role at Nike is completely unrelated to the NCAA March Madness campaigns, including the 2022 campaign.  Indeed, she does not know - let alone communicate with - anyone at Nike who worked on the campaign, and she had no record or recollection of ever receiving a direct Instagram message containing a Dropbox link from Jones.  (Doc. 32-1 at ¶¶ 6-7.)  Nike relayed this information to Jones on a March 2, 2022 phone call, noting that it was taking Jones' claims seriously, but asking that Jones stop attacking Ms. Gallo while Nike investigated his allegations.  (*See* Doc. 32-28 at 2; Duvdevani Decl. at ¶ 4, Ex. 2; *see also* 3/5/2022 Video (Jones acknowledging that Nike's legal counsel "ask[ed] me to turn the heat down on Ms. Gallo as she has done nothing and denies any wrongdoing")).[3]

Shortly after speaking with Nike, Jones uploaded a video to Instagram that again publicly displayed Ms. Gallo's name and image and accused her of theft.  (*See id.* ("You think I am just a small black dumb creator you can steal from")).  Over the course of that same week, Jones named and tagged Ms. Gallo in over two dozen Instagram posts. (Doc. 32-1 at ¶¶ 6-7.)  He urged other social media users to likewise barrage Ms. Gallo.

---

[3] Accessible via https://www.facebook.com/harry.boyce.39/videos/1031410490792170.

(*Id.; see also* Duvdevani Decl. at ¶ 3, Ex. 1 "please tag and share"); *id.* at ¶ 5, Ex. 3 ("if you can't tag her, please tag a media outlet.")  Jones' actions exponentially increased the public harassment and forced Ms. Gallo to initially block the harassing users, and then to privatize her social media accounts.  (*See* Doc. 32-1 at ¶¶ 6-7*; see also* Doc. 32-28 at 1, 3.)  Not once in any of his harassing messages and social media posts did Jones ever claim to have trademark rights in the term "ballin" in light of any prior commercial use of the term.  (*See* Duvdevani Decl. at ¶ 33.)

A particularly negative feature of Jones' harassment campaign against Ms. Gallo was his baseless racism accusations.  Jones publicly accused Ms. Gallo of "stealing from black creatives without proper compensation or credit," "appropriating black culture…and passing off the work as [her] own," and treating Jones as a "dumb black creator [she] could steal from."  (Duvdevani Decl. at ¶ 5, Ex. 3; 3/5/2022 Video.[4]  Jones even aimed these attacks at Ms. Gallo's professional LinkedIn account, where he publicly demanded "[W]hy are you blocking anyone on Instagram who mentions your blatant theft? Is this how you've built yourself to your current position – by stealing from Black creatives and passing off their work as your own? You should be ashamed."  (Duvdevani Decl. at ¶ 6, Ex. 4; *see also id.* at ¶ 7, Ex. 5 ("Is this how white executives treat black creatives @Nike [?]")).  Jones drew additional attention and added weight to his allegations by tagging recognized civil rights organizations and activists in his posts, including the NAACP, the NAACP Legal Defense Fund, the ACLU, and Black

---

[4] Accessible via https://www.facebook.com/harry.boyce.39/videos/1031410490792170.

Lives Matter activist Shaun King, all the while encouraging his followers to do the same. (*See* Duvdevani Decl. at ¶ 8, Ex. 6 (reflecting a selection of Jones' Instagram mentions); *see also* 3/5/2022 Video[5] ("PLEASE TAG @NIKE @MISSGALLO ALONG WITH @ACLU @NAACP @SHAUNKING ON IG"). At Jones' urging, third party users flooded social media with similar accusations. (*See, e.g.* Doc. 16 at ¶¶ 40, 42, 44; Duvdevani Decl. at ¶ 9, Ex. 7 (reposted with approval by Jones)).

### b. Nike's Investigation and Jones' Lawsuit

In response to Jones' accusations, Nike diligently undertook a good faith internal investigation and shared its findings with Jones. (*See* Doc. 32-28.) On March 8, 2022, Nike's counsel sent a letter to Jones explaining that Nike's campaign was independently created, *see supra* at Section IV(a), and demanding that Jones immediately cease the harassment campaign against Ms. Gallo. (*See* Doc. 32-28 at 6-7.) Nike reiterated that Ms. Gallo had not received or viewed Jones' supposed Instagram "pitch," that she is not involved in product creation, that she has never worked on Nike's March Madness campaigns, and that she was not in contact with the Nike team working on the 2022 March Madness campaign. (*Id.* at 4-5.) In the interest of full transparency, Nike even provided Jones with confidential, internal Nike documents and communications that evidenced the organic and independent genesis of its 2022 March Madness bench tee design. (*Id.* at 5-6 (including, for example, evidence that Nike initially started with the phrase "ALL IN," which evolved during development to "BALL IN")). The next day,

---

[5] Accessible via https://www.facebook.com/harry.boyce.39/videos/1031410490792170.

Jones' newly retained counsel Pimal Patel replied to Nike: "[W]e are investigating the matter further and intend to provide a more detailed, formal response at a later date." (Duvdevani Decl. at ¶ 11, Ex. 9.)

Mr. Patel never sent the promised formal response.  (Duvdevani Decl. at ¶ 31.) Mr. Patel and Nike's counsel conferred later that month, and Nike explained that, among other issues, Jones' allegations were not only factually meritless, but legally improper because intellectual property law does not protect mere ideas or concepts of the sort that Jones purportedly shared with Ms. Gallo via Dropbox.  During that conference Nike's counsel specifically pointed out that Jones did not have any trademark rights in the word "ballin."  (*Id.* at ¶ 32.)

Several days later, on March 31, 2022, Jones filed the instant action which named not only Nike but two of its retail partners as well.  (Doc. 1.)  Jones' counsel sent the complaint to Nike's counsel annexed to a demand letter seeking $615,000 to resolve the dispute.  (Duvdevani Decl. at ¶ 15, Ex. 13.)  For the first time, Jones' complaint claimed trademark rights in "ballin", which he purportedly gained by licensing the word in October 2021 to his good friend for use on apparel and as the title of a podcast.  (Doc. 1 at ¶¶ 33-38.)  Nike refused Jones' absurd demand and expressly informed counsel that Nike would seek relief under the Lanham Act's exceptional case provision should Jones proceed with his frivolous claims.  (Duvdevani Decl. at ¶ 35.)

### c.  Jones' Exceedingly Weak Trademark and Related Claims

As discovery commenced, it quickly became apparent to Nike that Jones and his counsel had failed to investigate Jones' claims prior to filing the complaint, despite their

representations to the contrary.[6]  (Duvdevani Decl. at ¶ 14, Ex. 12 at 1; *id.* at ¶ 11, Ex. 9 at 1.)  Had a reasonable investigation actually occurred, Jones and his counsel would have certainly realized – as Nike repeatedly warned them – that the claims they sought to advance were frivolous.  First, Jones' supposed trademark rights were not based on the existence of a trademark registration, but rather relied on common law rights allegedly derived from prior use in commerce: *i.e.,* his licensure of the "ballin" design to Mr. Boyce, who then used "ballin" as the title of a basketball podcast and purportedly sold apparel bearing the "ballin" design.  (Doc. 1 at ¶¶ 33-38.)  But Jones claimed that, at best, his licensee sold only 60 garments bearing the "ballin" design, and that all sales occurred at one location in one state – Mr. Boyce's gym in Wisconsin.  (Duvdevani Decl. at ¶ 16, Ex. 14 at No. 10.)  Not only was this alleged use grossly insufficient to establish trademark rights, but Jones ultimately did not produce evidence of a *single* sale, despite directing Nike to "see Plaintiff's document production throughout discovery in this matter" regarding those supposed sales.  (*Id.*)  Instead, Jones produced one invoice showing that a graphic had been transferred to eleven garments on October 21, 2021, and some photographs with metadata from the same date showing three pieces of apparel bearing the "ballin" design.  (*See* Duvdevani Decl. at ¶¶ 17-20, Exs. 15-18.)  Neither the invoice nor the photographs evidence a use of the "ballin" design in commerce; at most, they show the existence of eleven garments.  (*Id.*)

---

[6] Jones did not notice a single deposition throughout the course of this matter.

More holes quickly became visible in Jones' narrative via the deposition of Mr. Boyce, Jones' purported licensee who revealed himself as Jones' childhood best friend. (Duvdevani Decl. at ¶ 13, Ex. 11 at 27:25-28:3; 42:20.)  Mr. Boyce testified that he had no records or receipts indicating how many garments with the "ballin" design he purportedly sold, or even evidencing that he sold any at all.  (*Id.* at 95:12-14; 102:25-103:4.)  However, Mr. Boyce testified that all the purported garment sales occurred inside his Wisconsin basketball gym, and were sold to local community members.  (*See id.* at 73:3-7; 102:2-6; 118:15-17.)  He further testified that he undertook no marketing efforts regarding these shirts, apart from wearing them himself.  (*Id.* at 62:7-10, 98:2-15) ("I did kind of marketing myself just by having it on, just by having it in the [Wisconsin] gym").   Finally, Mr. Boyce's deposition revealed that despite the complaint's allegations that the first episode of his podcast was published on December 13, 2021, prior to Nike's campaign (Doc. 1 at ¶ 37), his podcast did not actually publish until March 5, 2022, *after* Nike unveiled its 2022 March Madness campaign (and coincidentally the same day that Jones ramped up his harassment of Ms. Gallo).  (*See* Duvdevani Decl. at ¶ 13, Ex. 11 at 25:22-24; *see also supra* at Section IV(a)).

Jones' pre-litigation claims pertaining to Ms. Gallo's theft of the "ballin" design idea remained unsupported throughout discovery.  While Nike produced documentary evidence showing how its 2022 March Madness campaign was created and developed - entirely without Ms. Gallo's input - Jones ultimately produced *no* evidence that he ever sent the Instagram direct message to Ms. Gallo with the alleged Dropbox link on April 18, 2022.  (Doc. 1 at ¶¶ 26-27.)  Rather, the screenshots that Jones produced from his

10

own Instagram account showed no prior messages had been exchanged with Ms. Gallo's account.  (*See* Duvdevani Decl. at ¶ 8, Ex. 6 (showing that Jones' first direct message to Ms. Gallo was sent February 28, 2022 at 2:41 PM)).  As Nike informed Jones prior to the existence of this lawsuit, Ms. Gallo's Instagram account likewise did not have record of the alleged message.  (*See, e.g.* Doc. 32-28 at 6 & n.2.)[7]  It turned out that Jones' entire "Ms. Gallo is a bad, racist person that stole from me" theory hinged on a Dropbox record showing that an anonymous "Guest" user viewed his design pitch three times.  (Doc. 1 at ¶¶ 28-31.)  Yet Jones produced no evidence showing that the anonymous user was, in fact, Ms. Gallo or anyone affiliated with Nike.  (*See* Duvdevani Decl. at ¶ 21, Ex. 19 at 71:2-12 ("Q: You never had any information from Dropbox that said that anyone at Nike viewed this deck, right?" "A: No.")).

Finally, Jones represented that "evidence of several instances of actual confusion [would] be produced" and that he would "likely be presenting an expert witness to provide testimony and opinions on issues related to actual confusion and the likelihood of confusion."  (Duvdevani Decl. at ¶ 16, Ex. 14 at No. 3.)  But Jones never produced any evidence of actual confusion, and never retained an expert witness.  Instead, Jones presented screenshots of social media users apparently confused about the pronunciation of Nike's 2022 March Madness bench tee design (i.e. "Ballin'" versus

---

[7] Although Jones' Instagram account shows that his earliest direct message to Ms. Gallo was sent on February 28, 2022, Jones nonetheless publicly posted screenshots of his messages to Ms. Gallo where the send date was not visible, so viewers would mistake the Dropbox link he sent on February 28, 2022 with the Dropbox link he claimed to have sent two years earlier.  (*Cf.* Duvdevani Decl. at ¶ 8, Ex. 6 *with id. at* ¶ 3, Ex. 1.)

"Be All In"), as though this was evidence of Lanham Act source confusion, which it is not. (*See, e.g.* Duvdevani Decl. at ¶ 21, Ex. 19 at 138:19-143:18 ("Q: Is there any tweets that I can find here showing a mistaken belief that related to the source of the shirt as opposed to what it said, BALLIN or B All In?" "A: No."))

Judge Edison's recommendation that the Court grant summary judgment recognized that Jones failed to show that he used the "ballin" design as a mark in commerce, or in connection with anything more than, at best, entirely intrastate, *de minimus* sales. (Doc. 46 at § B.) The Court's ruling reflected precisely what Nike had warned Jones all along – that he had no valid trademark rights, no supporting facts for his public accusations, and no cognizable claims against Nike. (*See id*; Doc. 50.) While courts often allow trademark infringement claims to proceed to trial given their highly factual nature, Jones' claim was so exceedingly weak on multiple fronts that the Court was able to grant Nike's summary judgment motion on multiple bases.

## V. **ARGUMENT**

### a. **Legal Standard (15 U.S.C. § 1117)**

Under the Lanham Act's 15 U.S.C. § 1117(a), the prevailing party "in exceptional cases" may be awarded "reasonable attorneys' fees." In the Lanham Act context, a prevailing party is "a party in whose favor judgment is rendered" or "one who has been awarded some relief by the court." *All. for Good Gov't*, 919 F.3d at 295 n.16. Where a case is dismissed on summary judgment, as it was here, the moving party is deemed the prevailing party. *See Johnston v. Kroeger*, 2023 WL 5983914, at *1 (W.D. Tex. Sept. 14, 2023), *report and recommendation adopted*, 2023 WL 6466227 (W.D.

Tex. Oct. 4, 2023) ("Defendants are the prevailing parties because the Court granted their motion for summary judgment"). There is no reasonable dispute that Defendants are the prevailing parties in this action.

To evaluate whether a Lanham Act case is "exceptional," the Fifth Circuit has adopted the standard set forth by the Supreme Court in the patent context in *Octane Fitness, LLC*, 572 U.S. at 554. *See Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016). While there is no rigid test, an exceptional case is defined as one that, upon the totality of circumstances, "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Savage Tavern, Inc. v. Signature Stag, LLC*, 2022 WL 1471442, at *6 (N.D. Tex. May 10, 2022) (citing *Octane Fitness,* 572 U.S. at 554). Courts find cases to be exceptional when plaintiffs bring fatally flawed claims and "persist[] in litigating…due to either obstinance or a continued misapprehension of trademark law." *Id.* at *6.

The district court must also give due consideration to all other circumstances relevant to granting fees, including "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Farouk Sys., Inc. v. AG Glob. Prod., LLC,* 2016 WL 6037231, at *3-4 (S.D. Tex. Oct. 14, 2016). Courts in this district have noted that "[t]he cases show that the most common types of evidence establishing exceptionality include evidence showing that…the plaintiff failed to conduct an adequate prefiling investigation or to exercise due diligence before filing suit; the plaintiff knew or should

13

have known that its claim was meritless or lacked substantive strength; the plaintiff initiated the litigation to extract settlements from defendants to avoid costly litigation; [or that] the plaintiff proceeded in bad faith." *W. Falcon, Inc. v. Moore Rod & Pipe*, LLC, 2015 WL 3823629, at *6 (S.D. Tex. June 18, 2015); *see also RLIS, Inc. v. Cerner Corp.,* 2015 WL 5178072, at *1 (S.D. Tex. Sept. 3, 2015) (same).

Courts have also concluded that no good faith basis for continued litigation exists after a fatal flaw in a plaintiff's claim is revealed. *See Savage Tavern,* 2022 WL 1471442, at *6 ("There was no good-faith basis for Savage Tavern's continued litigation of this case after Signature Stag filed its counterclaim, affidavits, and business records"). Persistence in asserting a claim is exceptional where a plaintiff's own witnesses admit the fatal flaw. *See GeoDynamics, Inc. v. DynaEnergetics US, Inc.*, 2017 WL 6559170, at *4 (E.D. Tex. Dec. 21, 2017). Indeed, the Fifth Circuit has held that exceptional cases display a "constellation of red flags" that set them apart from other Lanham Act claims. *Ballero v. 727 Inc.*, 744 F. App'x. 871, 873 (5th Cir. 2018).

A movant bears the burden of demonstrating the case's exceptional nature by a preponderance of the evidence. *See Savage Tavern,* 2022 WL 1471442, at *3 (citing *Octane Fitness,* 572 U.S. at 624). The Fifth Circuit has found that lawsuits which are "either frivolous or motivated by bad faith [] are two of the most common situations that will support a fee award." *Ballero*, 744 F. App'x. at 873. Notably, the movant need not show bad faith, malice, or fraud: an exceptionally weak claim by the opposing party can suffice, as can inexplicable litigation conduct. *Savage Tavern,* 2022 WL

14

1471442, at *6 (citing *Alliance for Good Gov't v. Coalition for Better Gov't,* 919 F.3d

291, 295-96 (5th Cir. 2019).  The instant case is exceptional on both fronts.

### b.  Nike is Entitled to Attorneys' Fees Under 15 U.S.C. § 1117

Nike is entitled to recover its full attorneys' fees totaling **$570,481.43** incurred

in its nearly two year-long defense against Jones' frivolous claims of trademark

ownership and infringement.[8]  Both prongs of 15 U.S.C. § 1117 are met:  Defendants

are the prevailing parties, and this case is exceptional given Jones' frivolous claims and

his inexplicable litigation conduct in service of such weak claims.  (Doc. 46 at § B; Doc.

50.)

Defendants are the prevailing parties on all claims because the Court dismissed

Jones' claims with prejudice and entered final judgment in Defendants' favor.  (Doc.

50.)  Although Jones agreed to voluntarily withdraw his common law unjust enrichment

and quantum meirut claim, he never formally withdrew that claim from the record, so

it too was dismissed with prejudice by the Court.  (*See* Doc. 46 at 4 n.3.)  Moreover,

Jones' common law claim was premised on Nike's alleged infringement of Jones'

purported trademark rights, and it would have therefore necessarily risen and fallen

alongside the existence of his purported trademark rights.  *See RRK Foods Inc. v. Sree*

*Nidhi Corp.*, 2022 WL 3636676, at *5 (N.D. Tex. Aug. 23, 2022) (holding that "unjust

---

[8] Nike paid the attorneys' fees and costs in this action on its own behalf and on behalf
of two retail partners that Jones chose to sue – likely either for purposes of harassment
or ill-perceived leverage, or to support that this District was a proper venue for his claim
(Jones is a Wisconsin resident with no ties to Texas; Nike is an Oregon company
headquartered in Oregon).  (Duvdevani Decl. at ¶ 37.)

enrichment…hinges on the likelihood-of-confusion inquiry because the claim is that [Defendant] was unjustly enriched by their unauthorized use of a mark that is confusingly similar to [Plaintiff's] mark.")  Nike is a prevailing party despite the dismissal of its counterclaims as moot, because the Court found those counterclaims to be "a mirror image of [Jones's] Lanham Act claim" – thus, prevailing in its defense against Jones' claims necessarily mooted Nike's counterclaims.  (Doc. 50 at 13.)  *See Tinker, Inc. v. Poteet*, 2018 WL 4189705, at *2 (N.D. Tex. Aug. 9, 2018), *report and recommendation adopted*, 2018 WL 4184.798 (N.D. Tex. Aug. 31, 2018) (finding "Defendants [were] clearly the prevailing party" where they "successfully defended themselves against Plaintiff's claims," even though their counterclaims were denied).

The Court's adoption of Judge Edison's recommendation and its grant of summary judgement on the basis that "as a matter of law…Jones does not own a legally protected mark in 'ballin,' and "is unable to establish that he used the mark 'ballin' 'in commerce' as required by the Lanham Act" (Dkt. No. 46 at 11), establishes exceptionality.  *Farouk,* 2016 WL 6037231, at *3.  By the Court's own finding, Jones' claims were not merely losing arguments; his trademark claims were fatally flawed from the outset of this litigation because he never had any trademark rights to claim.

Moreover, his claims were frivolous and objectively unreasonable.  Although Jones represented to have undertaken an investigation prior to filing this action, *see supra* at Section IV(b), his persistence in advocating his groundless claims reveals that he either failed to carry out the pre-suit investigation or he ignored the fatal flaws and advanced his claims even after he knew them to be meritless.  *See W. Falcon,* 2015 WL

3823629, at *6.  In either scenario, Jones' behavior was unreasonable.  *See id.*  Indeed, Jones persisted in his claims despite the obvious "constellation of red flags" that accompanied them.  *See Ballero*, 744 F. App'x. at 873.  For example, Nike provided Jones with ample evidence of its independent creation of the 2022 March Madness campaign and of Nike's noninfringement before this litigation was filed.  (*See* Doc. 32-2.)  Nike's counsel also explained to Jones' counsel that he could not have trademark rights in a mere design idea, only to have Jones plead trademark infringement causes of action, despite never claiming trademark rights prior to suit.  (*See* Duvdevani Decl. at ¶¶ 32-33.)  Jones alleged in his complaint that he used "ballin" in a podcast prior to Nike's March Madness campaign, but both public evidence and the evidence provided in discovery revealed that allegation as a lie.  (*Cf.* Doc. 1 at ¶ 37 *with* Duvdevani Decl. at ¶ 13, Ex. 11 at 25:22-24.)  Even Mr. Boyce – Jones' own best friend and the supposed licensee critical to Jones' use argument – admitted that none of the purported apparel uses or sales occurred in interstate commerce, but entirely within the bounds of one location in Wisconsin.  (*See* Section IV(c)).  Yet Jones ignored these red flags and pushed forward despite a "complete failure of proof" regarding his use of the mark in interstate commerce, his theft theory, or any consumer confusion.  *See Savage Tavern*, 2022 WL 1471442, at *7.

Lastly, it is apparent from the record that Jones did not file this groundless lawsuit to protect non-existent trademark rights, but, instead, to continue to harass Nike, pressure Nike into a settlement, and cause Nike to expend significant time and resources defending three defendants against his frivolous claims.  *See W. Falcon,* 2015 WL

3823629, at *6.  Prior to filing, Jones orchestrated a widespread social media harassment campaign against Ms. Gallo and Nike, publicly accusing them of theft and racism.  (*See supra* Section IV(a)).  He then filed this lawsuit and attached his complaint to an outrageous six-figure demand.  (*See supra* at Section IV(c)).

Courts in this circuit have found cases with similar fact patterns to be exceptional.  For example, in *Farouk*, the court held that an award of fees was warranted where the plaintiff launched a pre-suit campaign against the defendant and attempted to have their products removed from distribution, threatened suit when the campaign was unsuccessful, brought a trade dress action following the pre-suit animosity without any evidence of actual consumer confusion or a consumer survey, and ultimately failed to even establish that it owned a protectable trade dress under the Lanham Act.  *See* 2016 WL 6037231, at *3-4.  In *Savage Tavern*, the court found exceptionality where the plaintiff failed to establish the requisite first use, offered "zero evidence" of use other than "self-serving and entirely suspect statement[s]," and persisted in advancing its claims absent evidence and despite the revelation of its claims' fatal flaws.  *See* 2022 WL 1471442, at *6-7 ("[T]here has been a complete failure of proof on Savage Tavern's part…In short, the weakness of Savage Tavern's litigating position and the unreasonable manner in which it persisted in that position compel the Court to conclude that this is an exceptional case").  And, in *GeoDynamics*, the court awarded fees for exceptionality where the plaintiff did not provide the evidence that it had stated would establish its use in commerce, and ultimately presented no evidence of such use at all.  *See* 2017 WL 6559170, at *5 ("Without such evidence of continued use, it was unreasonable for

GeoDynamics to pursue its trademark claim … with such an objectively weak infringement position").

In sum, Jones used this Court to file a trademark infringement action against three defendants even though he had no reasonable basis to support the ownership of any trademark rights, and he then failed to provide any supporting evidence of trademark ownership or likelihood of confusion.  Jones' pre-suit silence regarding his purported trademark rights indicates that he did not believe he had any, yet he asserted such rights in this action, after dragging an innocent party's name through the mud.  For all the reasons discussed herein, this case should be deemed exceptional under the Lanham Act, entitling Nike to its reasonable attorneys' fees in defending all Defendants from Jones' frivolous claims.

### c.  Nike is Entitled to the Following Fees

 In the Fifth Circuit, the "lodestar method" is performed to determine the reasonableness of attorney's fees.  *Tortilla Town, Inc. v. Tortilla Town, LLC*, 2023 WL 3222799, at *1 (W.D. Tex. May 3, 2023) (citing *Transamerican Natural Gas Corp. v. Zapata P'ship (In re Fender)*, 12 F. 3d 480, 487 (5th Cir. 1994)).  The lodestar method involves two steps: (1) determining the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating lawyer; and (2) calculating the lodestar amount by multiplying the reasonable hourly rate by the number of hours reasonably expended.  *Id.*

Nike is entitled to its full fees in this matter.  As discussed *supra* at Section V(b), Defendants are the prevailing party in all claims brought in this action.  Moreover, the

Fifth Circuit has held that courts should permit recovery of *all* fees where "Lanham Act and non-Lanham Act claims are so intertwined that it is *impossible to differentiate* between work done on claims." *Procter Gamble Co. v. Amway Corp.*, 280 F.3d 519, 527 (5th Cir. 2002). Because Jones' unjust enrichment and quantum meirut claim rose and fell with the existence of Jones' purported trademark rights, any work defending against the common law claim cannot be differentiated from Nike's work defending against Jones' Lanham Act claim. *See id.* It is similarly impossible to differentiate between Nike's work in pursuit of its counterclaims, and Nike's work defending against Jones' Lanham Act claim, because – as the Court has already found – Nike's counterclaims "mirror[ed]" Jones' Lanham Act claim. (Doc. 46 at 13 (citing *Elepreneurs Holdings, LLC v. Benson*, 2021 WL 5140769, at *5 (E.D. Tex. Nov. 4, 2021)). Therefore, no division of attorneys' fees is required to account for work pertaining to Jones' common law claim or Nike's counterclaims.

Nike provides support for the fees sought under the lodestar method, all of which were incurred by Nike, including detailed time records justifying the hours expended. (Duvdevani Decl. at ¶¶ 29-64.) An award is not excessive simply because it is large, nor even if it is disproportionate to the results obtained – rather, what is important is that the requested fees must bear a reasonable relationship to the litigation. *See Apex Int'l, LLC v. Trennepohl,* 2021 WL 5658959, at *7 (N.D. Tex. Nov. 3, 2021).

Overall, Nike requests $570,481.43 in attorneys' fees against Jones pursuant to 15 U.S.C §1117 of the Lanham Act.[9]  (Duvdevani Decl. at ¶ 63.)  As explained in greater detail in the accompanying Duvdevani Declaration, these fees bear a reasonable relationship to this action.  (*See id.* at ¶¶ 36-64.)  Nike required experienced trademark counsel to defend all three defendants in this action against Jones' baseless claims.  (*Id.* at ¶¶ 37, 40.)  In doing so, Nike's counsel took on only necessary work, and moved for summary judgment at its earliest opportunity to avoid the unnecessary expense of further litigation and trial.  (*Id.* at ¶ 39.)

## VI.    **CONCLUSION**

For the foregoing reasons, Nike respectfully requests that the Court grant its Motion and issue the relief requested herein.

---

[9] Nike anticipates Jones to respond to this Motion, as he did to Nike's Bill of Costs, by claiming insolvency.  (*See* Doc. 53.)  While Nike disputes that characterization, in evaluating fees, courts must weigh a party's claimed inability to satisfy an award with the important countervailing needs for compensation and deterrence to the prevailing party. *See N.T.A.A. Inc. v. Nike, Inc. et al*, 2:21-cv-00398 (DDP), Dkt. No. 181 (C.D. Cal. Apr. 22, 2024) (awarding $1,491,634.37 attorneys' fees despite plaintiff's claimed inability to satisfy a judgment due to important "considerations of compensation and deterrence.")

Dated: April 22, 2024                    Respectfully submitted,


**DLA PIPER LLP (US)**

<u>*/s/ Brett Solberg*</u>
Brett Solberg
Texas Bar No. 24070651
Brett.Solberg@us.dlapiper.com
845 Texas Avenue, Suite 3800
Houston, Texas 77002-5005
Tel: (713) 425-8445

Tamar Y. Duvdevani (admitted *Pro Hac Vice*)
Tamar.Duvdevani@us.dlapiper.com
Marc E. Miller (admitted *Pro Hac Vice*)
Marc.Miller@us.dlapiper.com
Joshua Schwartzman (admitted *Pro Hac Vice*)
Joshua.Schwartzman@us.dlapiper.com
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1004
Tel: (212) 335-4500

*Attorneys for Defendant/Counter-Plaintiff Nike,*
*Inc. and Defendants BSN Sports, LLC and*
*Dick's Sporting Goods, Inc.*

1

## CERTIFICATE OF CONFERENCE

In accordance with the Court's Procedures Section 5(d), I certify that on March 15, 2024, I conferred with Plaintiff's counsel Joseph R. Anderson and Pimal Patel via electronic correspondence, regarding this motion for fees and costs.  Counsel cannot agree about the disposition of this motion.

Dated: April 22, 2024

_/s/    Joshua Schwartzman_
Joshua Schwartzman

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served via the Court's CM/ECF system on April 22, 2024.

_/s/    Tamar Duvdevani_
Tamar Duvdevani

2